# IN THE COURT OF APPEALS OF IOWA

No. 23-0396
Filed May 24, 2023

IN THE INTEREST OF O.H. and J.Y.,
Minor Children,

S.J., Mother,
    Appellant

W.H., Father,
    Appellant.
_____

Appeal from the Iowa District Court for Jasper County, Steven J. Holwerda, District Associate Judge.

A mother appeals the termination of her parental rights to two children. A father separately appeals the termination of his parental rights to one of the children. **AFFIRMED ON BOTH APPEALS.**

Nicholas A. Bailey of Bailey Law Firm, P.L.L.C., Altoona, for appellant mother.

Meegan M. Keller, Altoona, for appellant father.

Brenna Bird, Attorney General, and Mackenzie Moran, Assistant Attorney General, for appellee State.

Dusty Clements of Clements Law & Mediation, Newton, attorney and guardian ad litem for minor children.

Considered by Schumacher, P.J., and Chicchelly and Buller, JJ.

**CHICCHELLY, Judge.**

S.J. appeals the termination of her parental rights to two children, O.H. and J.Y. W.H. separately appeals the termination of his parental rights to O.H.[1] Both parents maintain the statutory grounds are unsatisfied, termination is not in the best interests of the children, an exception should be granted due to the parent-child bonds, and a guardianship should be established. The mother also requests an exception based on J.Y.'s placement with his father. Upon our de novo review, we affirm termination of both parents' parental rights to their respective children.

## I.    *Background Facts and Proceedings.*

J.Y. and O.H. were born in 2013 and 2016, respectively. In August 2020, the Iowa Department of Human Services[2] received allegations of methamphetamine use by the parents. After delaying eight days, the parents completed urine drug screens that returned negative for illegal substances. Shortly thereafter, the mother was arrested for possession of methamphetamine. A hair test was performed and returned positive for methamphetamine. The mother then admitted to relapsing and actively using methamphetamine. In October, the parents stipulated to O.H. and J.Y.'s adjudication as children in need of assistance (CINA). The children were allowed to remain in the parents' custody under the department's supervision.

In December, the parents stipulated to the children's continued adjudication as CINA. In April 2021, the department learned of an incident of domestic violence

---

[1] No action was taken to terminate the parental rights of J.Y.'s father. References to the father and parents will refer to O.H.'s father unless otherwise indicated.
[2] The department is now known as the Iowa Department of Health and Human Services.

by the father in J.Y.'s presence, which resulted in a founded report for denial of critical care. The father then refused to drug test for nearly a month before complying with a hair test that returned positive for methamphetamine. On May 11, the court removed O.H. from her father's custody due to the drug use and domestic violence. Later in May, the child's maternal grandmother reported that the father violated the no-contact order in place against him. The parents stipulated that the children remained CINA again in July. In August, the department received allegations that the mother was using methamphetamine while caretaking for the children. On August 10, both children were removed from the mother's custody due to behavioral indicators of drug use, failure to cooperate with drug testing, and additional allegations of domestic violence in front of the children. The father was later convicted of assault causing injury for an incident against the mother that took place on August 6. O.H. was placed with her paternal aunt, while J.Y. was placed with his father. Since then, both children have remained in these placements.

The mother and father continued not to cooperate with drug testing through the remainder of 2021 and into 2022. The parents stipulated to the continued CINA adjudication in January 2022. In February, the mother reported a domestic assault to the police and requested a no-contact order against the father. In May, a social worker for the department observed a bruise on the mother's forehead and a black eye. The mother shared that she had been with the father a few times despite the no-contact order. The father obtained a mental-health evaluation in May but was reportedly not interested in the recommended treatment. On June 1, the father was arrested for violating the no-contact order with the mother and later pled guilty.

In July, the father was advised that treatment facilities were attempting to contact him regarding open beds but getting no answer. In August, a social worker for the department contacted a substance-abuse treatment center where the father said he was attending outpatient services but learned he was not a client there.

In September, the State filed a petition to terminate the parents' parental rights. The State also filed a trial information in September, charging the father with domestic abuse assault and strangulation with bodily injury for an incident involving a paramour. The mother admitted to using methamphetamine in September, while the father admitted to using marijuana around that time. The father was also arrested in September for assault, interference with official acts, criminal mischief, burglary, and attempted burglary. The charges were still pending at the time of the termination hearing. As the district court described, the father appeared in police videos "to be under the influence of something or experiencing a mental-health breakdown resulting in extremely bizarre and concerning behaviors."

On December 11, both parents submitted sweat patches for tests that returned positive for methamphetamine. The parents maintain the results were false positives. The district court specifically found their explanations or protestations to not be credible. The father completed an independent hair test in January 2023 that came back positive as well. A January update from the mother's substance-abuse counselor indicates that the mother reengaged[3] with treatment

---

[3] The mother previously attended treatment with this facility from October 2020 to March 2022. At the time of discharge, the mother was not open to making some of the recommended changes and left to start services in another location. She tried out a few different facilities in the interim.

on December 14, 2022, and had been consistent with her attendance. Her urine drug screens provided in conjunction with treatment since then have been negative. The counselor indicated the mother was more open and honest concerning her mental health and abuse and that the mother "appears more open to taking the steps to protect herself and her children."

The court held a termination and permanency hearing in January 2023. The mother testified on the second day of the hearing that the father took her car the week prior without her permission and had not yet returned it. She shared that their relationship had been on-again, off-again and that she did not call the police every time he was physical with her. She further testified that the father stayed with her on occasion or with other friends, and the father agreed that he did not have stable housing. In February, the court entered an order terminating the mother's and father's respective parental rights. Both parents filed timely appeals.

## II. Review.

Our review of termination proceedings is de novo. *See In re C.B.*, 611 N.W.2d 489, 492 (Iowa 2000). "We will uphold an order terminating parental rights where there is clear and convincing evidence of the statutory grounds for termination." *In re T.S.*, 868 N.W.2d 425, 431 (Iowa Ct. App. 2015). "Evidence is clear and convincing when there is no serious or substantial doubt as to the correctness of the conclusions of law drawn from the evidence." *Id.* We give weight to the district court's fact findings, especially those about witness credibility, although they are not binding. *See* Iowa R. App. P. 6.904(3)(g); *C.B.*, 611 N.W.2d at 492.

### III. Discussion.

The principal concern in termination proceedings is the children's best interests. *In re L.T.*, 924 N.W.2d 521, 529 (Iowa 2019). Iowa courts use a three-step analysis to review the termination of parental rights. *In re A.S.*, 906 N.W.2d 467, 472 (Iowa 2018). Those steps include whether: (1) grounds for termination have been established, (2) termination is in the children's best interests, and (3) we should exercise any of the permissive exceptions to termination. *Id.* at 472–73. We review the parents' arguments regarding each step in turn.

*A. Grounds for Termination.*

Here, the district court found the State proved by clear and convincing evidence that termination of the mother's and father's parental rights was appropriate under paragraphs (d), (e), and (f) of Iowa Code section 232.116(1) (2023). We may affirm if the record supports termination on any one ground. *See In re A.B.*, 815 N.W.2d 764, 774 (Iowa 2012). While both parents name the relevant paragraphs on appeal, neither substantively alleges the respective children could be returned to their custody at the time of the termination hearing, nor any of the other elements of this statutory ground. *See* Iowa Code § 232.116(1)(f)(4) (requiring "clear and convincing evidence that at the present time the child cannot be returned to the custody of the child's parents as provided in section 232.102"); *see also In re D.W.*, 791 N.W.2d 703, 707 (Iowa 2010) (interpreting "at the present time" to mean "at the time of the termination hearing"). Therefore, both parents' claim regarding paragraph (f) is waived, and we may affirm on that ground without further analysis due to their failure to challenge this ground for termination. *See In re N.N.*, No. 21-1978, 2022 WL 610318, at *1 (Iowa

Ct. App. Mar. 2, 2022) (holding failure to challenge one of the grounds for termination results in waiver of any claim of error on that ground).

Even if an argument was advanced, we would find O.H. and J.Y. could not be returned to their mother's custody, nor O.H. to her father's custody, at the time of the hearing. Accordingly, we affirm the district court's conclusion that a ground for termination has been established under Iowa Code section 232.116(1)(f).

*B. Best Interests.*

To evaluate best interests, "the court shall give primary consideration to the child's safety, to the best placement for furthering the long term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." Iowa Code § 232.116(2). The "defining elements" of the best-interests analysis are the child's safety and "need for a permanent home." *In re H.S.*, 805 N.W.2d 737, 748 (Iowa 2011) (citation omitted).

Here, neither parent has adequately demonstrated their ability to be stable and sober parents. They have not consistently attended substance-abuse treatment or complied with drug testing. As the district court noted, the mother has several factors in her favor, such as full-time employment and stable housing, as well as making child-support payments for J.Y. and attending treatment regularly for the past two months. Although we certainly commend these achievements, we find these actions are insufficient and too late. Iowa law affords limited patience for parents to demonstrate that children can safely be returned to their custody. *See C.B.*, 611 N.W.2d at 494 (discussing the age-associated timelines for a determination that the needs of a child would be promoted by termination of parental rights). Similarly, we cannot say that the father has demonstrated promise

towards offering a safe and permanent home for O.H. He has obtained employment and been appropriate during visits, but he has no permanent residence and has not consistently engaged in treatment. We will not deprive O.H. of permanency based on the hope that someday the father will be able to provide her with a stable home. *See In re A.M.*, 843 N.W.2d 100, 112 (Iowa 2014).

At the time of the termination hearing, the children had been removed from the parents' custody for more than one year, and both parents remained restricted to fully supervised visits. Furthermore, the children are each in stable homes with their respective placements. Each placement presents a long-term option and offers the opportunity for the children to maintain a relationship with each other. *See* Iowa Code § 232.116(2)(b); *In re M.W.*, 876 N.W.2d 212, 225 (Iowa 2016) (noting a child's favorable integration into a foster placement supports finding termination is in the child's best interests). On this record, clear and convincing evidence shows that termination of both the mother's and father's parental rights is in the respective children's best interests.

*C. Exceptions.*

Both parents argue that an exception to termination should be granted because the parent-child bonds outweigh the need for termination. *See* Iowa Code § 232.116(3)(c) (providing a discretionary exception to termination when "[t]here is clear and convincing evidence that the termination would be detrimental to the child at the time due to the closeness of the parent-child relationship"). The provisions of section 232.116(3) are "permissive, not mandatory," and the parent bears the burden to prove the applicability of an exception to termination. *A.S.*, 906 N.W.2d at 475 (citation omitted). A social worker for the department testified

that the children are very bonded to the parents and share appropriate and loving relationships.  However, we do not find a parent-child relationship so strong that it outweighs the need for termination in either parent's case.  *See In re W.M.*, 957 N.W.2d 305, 315 (Iowa 2021) (finding the existence of a bond is insufficient when parents have "failed to provide the clear and convincing evidence necessary to show that, on balance, that bond makes termination more detrimental than not").

The mother also argues for an exception based on J.Y. being in his father's custody.  *See* Iowa Code § 232.116(3)(a) (stating the court "need not terminate the relationship between the parent and child if the court finds . . . [a] relative has legal custody of the child").  Again, this exception is discretionary and depends on the unique circumstances of each case.  *A.S.*, 906 N.W.2d at 475.  Here, we decline to preserve the mother's parental rights based on the child's familial placement.  "An appropriate determination to terminate a parent-child relationship is not to be countermanded by the ability and willingness of a family relative to take the child."  *Id.* (citation omitted).  We instead look to the child's best interests.  *See id.*  Having done so, we conclude J.Y.'s best interests are served by termination.

*D.  Guardianship.*

Both parents argue the court should have placed O.H. in a guardianship with her paternal aunt.[4]  Our courts do not prefer guardianship over adoption.  *Id.* at 477.  Again, if termination is appropriate, a relative's willingness to take the child

---

[4] The parents also make passing references to needing more time to achieve reunification, seemingly in the context of the requested guardianship for O.H. or the familial-custody exception for J.Y.  They do not directly request a formal extension, nor did they do so during the termination hearing.  Even if they did, we would not find an extension appropriate in this case.  *See* Iowa Code § 232.104(2)(b).

will not change that. *See id.* at 475. The deciding factor is the child's best interests.

*See id.* As the district court observed:

> [G]iven the volatile nature of the parents' relationship with each other as well as the volatile nature of the parents' relationship with the proposed guardian, the circumstances are not conducive to a successful and uneventful guardianship. Given the child's age, the parents' overall lack of consistency and progress for the past two years, and the volatile nature of the relationships involved, a guardianship is not in the child's best interest and will not provide her with the stability and permanency which she needs.

Having considered O.H.'s best interests, we decline to order a guardianship.

## IV. Disposition.

We find there is a statutory ground for termination and no exception should be applied for the parent-child bonds, relative custody, or a guardianship. Because it is in the children's best interests, we affirm termination of the mother's and father's parental rights to the respective children.

**AFFIRMED ON BOTH APPEALS.**